**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Case No.: 26-41903 |
| Patrick J. Egan | Chapter 11 Case (Subchapter V) |

Debtor.

## Plan of Reorganization For Small Business Under Chapter 11

## INTRODUCTION

Patrick J. Egan (the "Debtor") proposes the following Chapter 11 Plan of Reorganization for Small Business pursuant to the provisions of the Bankruptcy Code.

Prior to voting to accept or reject this Plan, all creditors are encouraged to read and review the Plan in its entirety. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's income will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation, in which creditors will receive less than the projections in this Plan.

## Article 1: Defined Terms

**1.1 Defined Terms in Bankruptcy Code.** The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**1.2 Additional Defined Terms.**

**(1) "Allowed"** means with respect to any claim: (a) a proof of claim or a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; or (c) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

**(2) "Bankruptcy Code"** means Title 11 of the United States Code.

**(3) "Bankruptcy Rule"** means a Federal Rule of Bankruptcy Procedure.

**(4) “Chapter 11 Case”** means the Debtor’s pending case under the Bankruptcy Code, identified in the caption at the top of this Plan.

**(5) “Confirmation Date”** means the date on which the Confirmation Order is entered.

**(6) “Confirmation Order”** means the order entered by the Court confirming this Plan.

**(7) “Contested Claim”** means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor’s insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

**(8) “Court”** means the United States Bankruptcy Court for the District of Minnesota, which properly exercises jurisdiction over the Chapter 11 Case.

**(9) “Debtor”** means Patrick J. Egan.

**(10) “Effective Date”** means the first business day following the date that is 14 days after the entry of the Confirmation Order.

**(11) “Guaranteed Real Estate Entity**” means any entity in which the Debtor holds an interest that owns real property securing a debt as to which the Debtor is or was a borrower, co-borrower, or personal guarantor.

**(12) “Homestead**” means the Debtor’s principal residence at 6503 Shadow Lane, Chanhassen, Minnesota 55317.

**(13) “IRS”** means the Internal Revenue Service.

**(14) “Leslie Egan Claim**” means the property-settlement obligation arising under the Judgment and Decree in the marital dissolution proceeding entered in 2016. The remaining balance is approximately $750,000, subject to final accounting.

**(15) “Live Oak**” means Live Oak Banking Company.

**(16) “Petition Date”** means June 8, 2026.

**(17) “Plan”** means this chapter 11 plan of reorganization as amended, revised, or modified.

**(18) “Reorganized Debtor”** means the Debtor on and after the Effective Date.

**1.3 Exhibits.** All exhibits to the Plan are hereby incorporated by reference and made part of the Plan. The exhibits to the Plan include the following:

Exhibit A Liquidation Analysis

Exhibit B Three-Year Cash Flow Projections

Exhibit C List of creditors in Class 2 – general unsecured creditor pool

## Article 2: Background Information Regarding the Debtor, Liquidation Analysis and Feasibility

**2.1 Description and History of the Debtor's Financial Affairs.** The Debtor is an individual small-business debtor who elected Subchapter V. His debts are primarily business debts. He holds interests in real-estate and operating entities and is a guarantor or co-borrower on certain entity-level loans.

**2.2 Liquidation Analysis.** The Plan must provide that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A. As set forth in the liquidation analysis, if the Debtor was forced to liquidate its assets in chapter 7, unsecured creditors would receive less than they will under the Plan.

**2.3 Ability to Make Future Plan Payments.** The Debtor must also show that he will have enough income or cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information in Exhibit B. The Debtor's financial projections show that the Debtor will have sufficient income to make payments on the Plan. The final Plan payment is expected to be paid in December 2029. Projected debtor income tax from a later liability shift or disposition of business assets, if any, may require a modified plan.

## Article 3: Classification of Claims and Interests

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

The following table designates the classes of claims against the Debtor and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Expenses | No | No |
| N/A | Priority Claims | No | No |
| 1 | Live Oak Claim (contested / disputed) | Yes | Yes |
| 2 | Unsecured Claims (other than Class 3) | Yes | Yes |

| | | | |
|---|---|---|---|
| 3 | Leslie Egan Claim — § 523(a)(15) property settlement | Yes | Yes |

## Article 4: Treatment of Administrative Expense Claims and Priority Tax Claims

Under section 1123(a)(1) of the Bankruptcy Code, Administrative Expense claims and priority tax claims are not in classes and are treated as unclassified claims. Under the Plan, the unclassified claims shall receive the treatment described below.

**4.1 Allowed Administrative Expense Claims.** Except as otherwise provided in this Article, holders of Allowed claims specified in section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

Professional fees and expenses, including those of the Debtor's attorney and the Subchapter V trustee, incurred through the Effective Date and not previously Allowed shall be subject to Court approval. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses, no later than 30 days after the Effective Date. The Debtor estimates that the fees owed to his attorney, Sieling Law, PLLC are $4,000.00, after Sieling Law's retainer fee is exhausted and such remaining amount will be paid within 12 months after the Effective Date. Th estimated fees owed to the Subchapter V trustee are $3,000.00 and will be paid 30 days after the Effective Date or 30 days after court approval of such fees.

The Debtor is current on ordinary post-petition taxes. The Debtor reserves the right to modify the Plan to account for income tax arising from a post-petition partnership-liability shift, guarantee release, foreclosure, or other disposition of a Retained Estate Interest while that interest remains property of the estate.

**4.2 Priority Claims.**

Pre-petition Tax Claims: The Internal Revenue Service filed a proof of claim claiming a priority amount of $9,622.25 for estimated 2024 and 2025 taxes. Such priority taxes will be paid in full with interest at a rate of eight percent, payable monthly in the amount of $278.00, commencing one month after the confirmation date and continuing for 36 months thereafter or until paid in full, whichever is sooner.

The State of Minnesota filed a proof of claim claiming a priority amount of $3,075.46. Such priority taxes will be paid in full with interest at a rate of eight percent, payable monthly in the amount of $112.00, commencing one month after the confirmation date and continuing for 36 months thereafter or until paid in full, whichever is sooner.

The pre-petition priority tax owed by the Debtor is nondischargeable pursuant to 11 U.S.C. §§ 523(a) and 1192(2). To the extent the Minnesota Department of Revenue and the IRS claim penalties or nonpriority taxes; such portions will be treated as a Class 2 claim, general unsecured claims.

All other Allowed claims not specifically treated in this Section and entitled to priority under section 507(a) of the Bankruptcy Code shall be paid in full in cash as soon as practicable following the later of: (a) the Effective Date, (b) the due date, or (c) the date on which such claims are Allowed.

## Article 5: Treatment of Classified Claims and Interest

**Class 1 - Live Oak:**

Class 1 consists of the claim of Live Oak, pursuant to a proof of claim in the amount of $3,588,652.68. The Live Oak loan proceeds were used by a former business of the Debtor and secured by such business assets, and commercial real estate. Live Oak has liquidated its other collateral and foreclosed the commercial real estate. The Live Oak indebtedness is also secured by a purported mortgage on the Debtor's homestead located at 6503 Shadow Lane, Chanhassen, Minnesota 55317 (the "Homestead"). The Homestead has a fair market value of $745,000.00.

Pursuant to § 1190(3), the Plan modifies the secured portion of Live Oak's claims to $0.00. No Live Oak loan proceeds were used to acquire the Homestead and all such proceeds were used in connection with the Debtor's small business. The Homestead was acquired in 2016. The Live Oak loan proceeds were received in 2018. Based on this modification, the entire Live Oak Claim shall be treated as a Class 2 claim, subject to objection based on the dispute described herein.

The Debtor disputes the legality of the mortgage as being induced by fraud and misrepresentation. Prior to execution of the mortgage, a Senior Vice President of Live Oak falsely represented that Live Oak has never foreclosed on a borrower's primary residence and that the Debtor need not worry about losing his home to Live Oak. Relying on those, and other, representations, the Debtor reluctantly signed the mortgage.

The Debtor further asserts that Live Oak acted in bad faith and breached several regulatory provisions from the Small Business Administration when it refused to consider a sale of the commercial real estate presented by the Debtor and which would have resulted in a fraction of claim that now exists.

Based on the foregoing, the Live Oak Claim is a Contested Claim. Nothing in this Plan waives defenses, offsets, or causes of action against Live Oak, including but not limited to fraudulent inducement, negligent misrepresentation, promissory estoppel, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and related theories. Those rights may be asserted by claim objection, motion, or adversary proceeding.

**Class 2: General Unsecured Claims.**

Class 2 consists of all Allowed undisputed and unliquidated unsecured claims against the Debtor that are not entitled to priority and are not classified elsewhere in this Plan. Class 2 does not include the Leslie Egan Claim, which is Class 3. Contingent guarantees that remain contingent are not Allowed Class 2 claims unless and until they become fixed. Exhibit C includes the list of creditors included in Class 2 distribution. The other debt listed on the Debtor's schedule F are expected to be paid by the relevant business borrower. The Debtor believes the Class 2 claims total approximately $1,828,170.00 if the Live Oak Claim is excluded and $5,416,822 if the Live Oak Claim is included.

Holders of Allowed Class 2 claims shall receive their pro rata share of $115,920.00 to be paid and dispersed semi-annually in the amount of $19,320.00 each June and December of 2027 through 2029. This results in each Class 2 claim being paid approximately 6.3% of its claim.

Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law. The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Allowed Class 2 claims.

**Class 3: Leslie Egan Claim**

Class 3 consists of the Leslie Egan Claim. It is a property settlement, not a domestic support obligation; however, Ms. Egan relies on the payments from the Debtor as her primary source of income and has done so for many years. The claim is excluded from discharge under §§ 523(a)(15), 1141(d)(2), and 1192.

The holder of the Allowed Class 3 claim shall receive monthly payments of $4,000.00 for 36 months, beginning one month after the Effective Date. Any unpaid balance after completion of Plan payments is not discharged.

Separate classification is based on the nondischargeable character of the claim.

## Article 6: Distributions and Claims Administration

**6.1 Payments under the Plan.** Payments under this Plan shall be made by check (mailed with first class postage pre-paid), ACH, or wire transfer to the holder of each Allowed claim. If made by check, payments shall be mailed to the claim holder at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules as of the Confirmation Date. Holders of Allowed claims as of the Confirmation Date may contact the Reorganized Debtor to amend their addresses or bank account information at:

Patrick Egan
6503 Shadow Lane
Chanhassen, MN 55317

**6.2 Delay of Distribution on Contested Claims.** No distribution will be made on account of a Contested Claim unless such claim is Allowed by a final non-appealable order. The Debtor may reserve the proposed distribution on any Contested Claim, including the Live Oak Claim.

## Article 7: Implementation and Effect of Confirmation of the Plan

**7.1 Title to and Vesting of Assets.** All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date, to the full extent authorized by section 1141(b) of the Bankruptcy Code, all property of the Debtor and the estate vests in the Reorganized Debtor and such property is free and clear of all liens, encumbrances, claims, and interests of creditors, including any notices of lis pendens, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.

**7.2 Preservation and Settlement of Causes of Action.** In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively, the "Retained Actions"). All claims against Live Oak described in Article 5 are Retained Actions. Recoveries other than recoveries applied to the Live Oak dispute shall be disbursed pro rata to Allowed Class 2 claims unless the Court orders otherwise.

**7.3 Discharge.** If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from all claims that arose before confirmation of this Plan, except that the Debtor will not be discharged of any debt:

(a) imposed by this Plan; or

(b) to the extent provided in section 1141(d)(6) of the Bankruptcy including the Leslie Egan Claim.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any claim provided for in this Plan until the Court grants a discharge on completion of all payments due within the three years of this Plan, or otherwise provided in section 1192 of the Bankruptcy Code. A discharge under § 1192 does not discharge a debt of the kind specified in § 523(a), including the Leslie Egan Claim.

A discharge under this Plan discharges, waives, and releases the Debtor from any debt or claim that arose before the Effective Date and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a proof of claim was filed or deemed filed under section 501 of the Bankruptcy Code; (b) such claim is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan.

**7.4 Distribution of Plan Payments.** If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

## Article 8: General Provisions

**8.1 Default.** Nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code. If the Debtor fails to timely make a payment due to any class of this Plan, or if the Debtor fails to timely pay professional fees, the relevant creditor may send a written notice of default to the Debtor.

Unless the Plan expressly provides otherwise, if the Debtor fails to cure a default within 30 business days of such notice from a creditor, the relevant creditor shall be entitled to file a motion to seek stay relief. All unsecured creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

**8.2 Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.3 Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.4 Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

IN WITNESS WHEREOF, the undersigned have executed this Plan of Reorganization for Small Business under Chapter 11 as of September 8, 2026.

s/ Patrick J. Egan

**Patrick J. Egan**
Debtor

**SIELING LAW, PLLC**
By: s/ Mary F. Sieling
Mary F. Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN 55343
Phone: 612-325-1191
Email: mary@sielinglaw.com
Attorney for the Debtor

Exhibit A

**Patrick Egan**

**Liquidation Analysis**

| Asset | Gross Value | Total Secured Debt | Exemption | Net Equity to Ch 7 Estate |
|---|---|---|---|---|
| 6503 Shawdow Lane | $745,000.00 | $1,035,000 (disputed) | $1 | $0.00 |
| San Diego Timeshares | $1,750 | $0.00 | $1,750.00 | $0.00 |
| Vehicles | $25,500 | 0 | $19,000.00 | $6,000 |
| Household goods furnishing, electronics, and tools | $7,800 | 0 | $7,800 | $0 |
| Pool Table | $500 | 0 | $0.00 | $500 |
| Wheelchair, walker, crutches | $1,000 | 0 | $1,000 | $0 |
| Clothing | $1,000 | 0 | $1,000 | $0 |
| Cash and bank deposits | $5,500 | 0 | $0.00 | $5,500 |
| Shares of other companies | $105,000 | 0 | $0 | $105,000 |
| Fidelity IRAs | $397,000 | 0 | $397,000 | $0 |
| Term Life Insurance Policy | $0.00 | 0 | $0.00 | $0.00 |
| Total: | | | | $117,000.00 |

**Chapter 7 Distribution**

| | |
|---|---|
| Chapter 7 and Chapter 11 Admin Claims (estimate) | $29,000 |
| State of Minnesota | $3,075.46 |
| Internal Revenue Service (claim of $11,906.46) | $9,622.25 |
| Unsecured Creditors | $75,302.29 |

| **Egan Income** | **2027** | **2028** | **2029** |
|---|---|---|---|
| Debtor Income Salary | 133,000 | 133,000 | 133,000 |
| Debtor Income Distributions | 88,800 | 88,800 | 88,800 |
| Debtor Income Interest/Divid | 15,745 | 15,745 | 15,745 |
| **Total:** | 237,545 | 237,545 | 237,545 |

| **Egan Expenses** | | | |
|---|---|---|---|
| Income Tax | $39,800 | $39,800 | $39,800 |
| Housing cost including repairs, taxes and insurance | $21,500.00 | $21,500.00 | $21,500.00 |
| Utilities, including electic, heat, gas, water, sewer, garbage, phone, internet, cable. | $13,420.00 | $14,820.00 | $14,820.00 |
| Food, housekeeping supplies, and personal care products | $13,200.00 | $13,500.00 | $13,500.00 |
| Clothing Costs | $3,000.00 | $3,000.00 | $3,000.00 |
| Gas, vehicle maintance, licen | $8,300.00 | $8,700.00 | $8,500.00 |
| Entertainment | $5,000.00 | $6,200.00 | $6,200.00 |
| Life Insurance | $9,108.00 | $9,108.00 | $9,108.00 |
| Health Insurance | $7,200.00 | $7,800.00 | $7,800.00 |
| Medical Cost not covered | $10,000.00 | $11,500.00 | $11,500.00 |
| Vehicle Insurance | $6,900.00 | $6,900.00 | $6,900.00 |
| Legal, trustee and accounting | $8,000.00 | $2,500.00 | $2,500.00 |
| IRS Plan payment | $3,336.00 | $3,336.00 | $3,336.00 |
| MDOR Plan payment | $1,244.00 | $1,244.00 | $1,244.00 |
| Leslie Egan payment | $48,000.00 | $48,000.00 | $48,000.00 |
| Unsecured Creditor payment | $38,640.00 | $38,640.00 | $38,640.00 |
| **Total:** | $236,648 | $236,548 | $236,348 |

**Exhibit C – List of Creditors in Class 2 Unsecured Creditor Distribution Pool**

1. American Express
2. Commerce Bank
3. Costco/Citibank
4. Small Business Administration on P&J Lodging loan ending 8206
5. US Bank
6. Live Oak, subject to dispute and counterclaims.